# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JAMY MILLARD, | |
| Plaintiff, | |
| v. | |
| OLATHE HEALTH SYSTEM, INC., | |
| Registered Agent:<br>Stan Holm<br>Chief Executive Officer<br>20333 West 151st St<br>Olathe, KS 66061, | |
| and | Case No. 2:22-cv-2281 |
| FUSION MEDICAL STAFFING LLC | JURY TRIAL DEMANDED |
| Registered Agent:<br>National Registered Agents, Inc. of Kansas<br>112 SW 7th St Ste 3C<br>Topeka, KS 66063 | |
| and | |
| DR. BENJAMIN M. CHEN | |
| Johnson County Anesthesiologists, Chtd.<br>20375 W 151st St Ste 306<br>Olathe, KS 66061, | |
| Defendants. | |

## COMPLAINT

Plaintiff Jamy Millard ("Millard" or "Plaintiff"), for her Complaint against Defendants Olathe Health System, Inc. ("Olathe Health" or "Defendant"), Fusion Medical Staffing LLC ("Fusion Medical Staffing" or "Defendant"), and Dr. Benjamin Chen ("Dr. Chen" or "Defendant") (together "Defendants") states and alleges as follows:

## PARTIES

1. Plaintiff is a resident of the State of Missouri and a former employee of Defendants Olathe Health and Fusion Medical Staffing. At all relevant times Plaintiff was jointly employed by Defendants and appropriately characterized as an "employee" within the meaning of the laws of the State of Kansas.

2. Defendant Olathe Health is corporation organized under the laws of the State of Kansas which, at all times relevant hereto, has done business in the State of Kansas and been authorized to do so.

3. Defendant Fusion Medical Staffing is a limited liability company organized under the laws of the State of Nebraska which, at all times relevant hereto, has done business in the State of Kansas and been authorized to do so.

4. Defendant Dr. Benjamin Chen is a physician employed by Johnson County Anesthesiologists, Chtd., with credentials to practice medicine at Defendant Olathe Health.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1332 in that the parties are citizens of different States and the matter in controversy exceeds the sum or value of $75,000. Jurisdiction and venue are also proper in this Court on the basis that the events and occurrences described herein occurred in this jurisdiction, and the unlawful employment and related practices alleged herein were committed within this jurisdiction. This action properly lies in the District of Kansas pursuant to 28 U.S.C. Section 1391(b) on the basis that the claim arose in this judicial district.

## FACTS

6. Plaintiff Jamy Millard is a registered nurse. Beginning on September 14, 2021, Ms. Millard was employed by Fusion Medical Staffing to provide healthcare staffing services on a contract assignment basis.

7. On January 10, 2022, Ms. Millard accepted a position with Defendant Olathe Health as a post anesthesia care unit ("PACU") registered nurse at Olathe Medical Center in Olathe, Kansas. Defendants Fusion Medical Staffing and Olathe Health thereafter shared control and supervision of Ms. Millard's work, and Ms. Millard was jointly employed by Defendants Fusion Medical Staffing and Olathe Health.

8. On February 9, 2022, Ms. Millard assisted in the care of a post-operative orthopedic patient as part of her regular nursing duties. As Ms. Millard prepared to return the patient to her room for recovery, the patient complained of mild pain for which the patient requested additional pain medication. Because the patient had already been administered multiple doses of narcotics ordered by anesthesiologist Dr. Benjamin Chen, Ms. Millard decided instead to administer a dose of Toradol also ordered by Dr. Chen and listed on the patient's Medical Administration Record ("MAR"). After the medication was administered, Ms. Millard returned the patient to her room.

9. Several hours later, Dr. Chen entered the PACU and angrily asked Ms. Millard and the other staff present which nurse had been assigned to the post-operative orthopedic patient to whom Ms. Millard had administered Toradol. Ms. Millard responded that the patient had been assigned to her. Dr. Chen then demanded to know why the patient had been administered Toradol. In response, Ms. Millard explained that the patient had complained of mild pain for which she requested additional pain medication and that she had administered Toradol as ordered by Dr. Chen and listed on the patient's MAR.

10. Dr. Chen then became increasingly confrontational with Ms. Millard. He insisted that he "never ordered Toradol because Dr. [Shyam] Shridharani never allows for the treatment of his post-operative patients with Toradol" and that he "would never do that." Ms. Millard then politely asked Dr. Chen to consult the patient's MAR for himself and review the orders that he had placed for the patient. Dr. Chen refused to do so, and instead repeatedly denied that he had ordered Toradol for the patient's pain management. Dr. Chen then accused Ms. Millard of ordering Toradol for the patient in question, and Ms. Millard unequivocally denied his accusation. She insisted that if she needed an additional unprescribed medication for pain management for a patient assigned to her, she would have contacted him directly as the patient's assigned anesthesiologist to consider an order for additional medication for her pain. Ms. Millard added that she would never take it upon herself to order medications of her own volition. Dr. Chen then angrily left the PACU.

11. After his departure, Ms. Millard reviewed again the patient's MAR. She confirmed that the order history reflected that Dr. Chen had ordered each medication for the patient in question, including Toradol, and that no other employee or staff member had placed PACU orders for the patient in question.

12. Later the same day, Nurse Manager Ashley Grove took Ms. Millard aside and informed her that "Dr. Chen is very upset that you administered Toradol to this patient" and that Dr. Chen had "reported to hospital leadership that he was not responsible for the Toradol order included in the patient's MAR." Ms. Millard explained that Dr. Chen should not have ordered a medication for the patient that he did not want to be administered to her. Ms. Millard explained further that she had only been employed in the Olathe Medical Center PACU for six days, and that it was unreasonable for her to have institutional knowledge of a surgeon's medication preferences

4

that somehow deviate from the orders included in a patient's MAR. Ms. Millard then unequivocally denied that she had placed the Toradol order as Dr. Chen had alleged.[1]

13. Ms. Millard then reviewed the patient's MAR and order history with Ms. Grove and Surgical Services Director Jeffrey Thompson. Each agreed that Dr. Chen had indeed ordered each medication for the patient in question, including Toradol. Ms. Grove and Ms. Millard then assured Ms. Millard that "no harm came to the patient." Ms. Grove added that "the pharmacy will need to conduct an investigation, but it is only a formality." Ms. Grove and Mr. Thompson then instructed Ms. Millard to leave the hospital for the remainder of the day. Ms. Millard was not allowed to return, and her employment with Defendant Olathe Health was terminated.

14. On February 28, 2022, Fusion Medical Staffing Nursing Recruiter Andy Newton contacted Ms. Millard by phone. Mr. Newton explained that Olathe Health representatives wanted to learn why the MAR for the patient in question reflected that Ms. Millard had prescribed Toradol for her. In response, Ms. Millard unequivocally denied that she had placed the order for Toradol and explained that if the patient's MAR reflected an order placed by Ms. Millard for Toradol then the medical records had been altered by Dr. Chen or another Olathe Health representative.

15. During the same call on February 28, Mr. Newton explained further that Olathe Health representatives had requested a statement from her regarding the order for and

---

[1] Olathe Health representatives now claim that in the weeks following the termination of Ms. Millard's employment, Olathe Health also determined that Ms. Millard ordered and administered narcotic opioids Dilaudid, Demorol, and morphine to the patient referenced in paragraph 8 without instruction or authorization from Dr. Chen or another physician. The Kansas Risk Management Act, 29 K.S.A. Section 60-4921, *et seq.*, requires health care professionals to report any incident that "[i]s or may be below the applicable standard of care and has a reasonable probability of causing injury to a patient" or "may be grounds for disciplinary action by the appropriate licensing agency." K.S.A. § 65-4921(f).

Ms. Millard has not been reported by Olathe Health representatives for misconduct of any type to the Kansas Board of Nursing, and insist that a nurse's decision to order and administer narcotic and non-narcotic pain medications without instruction or authorization somehow fails to meet the standards set forth in K.S.A. § 65-4921(f) if the nurse's actions do not result in actual harm or injury to a patient. Ms. Millard was not asked to participate in any purported investigation of Defendant Olathe Health's baseless claims that Ms. Millard also ordered and administered narcotic opioids Dilaudid, Demorol, and morphine to the patient referenced in paragraph 8 without instruction or authorization from Dr. Chen or another physician.

administration of Toradol for the patient in question on the final day of her employment with Olathe Health.  Ms. Millard expressed to Mr. Newton her grave concern that if Olathe Health representatives made inaccurate and defamatory reports to the Board of Nursing regarding Dr. Chen's false claim that she had either made an unauthorized order for Toradol for the patient in question or administered an order for Toradol without authorization, her license and future employment as a registered nurse could be jeopardized.

16. Ms. Millard provided a written statement to Mr. Newton that set forth in detail her explanation that the patient's MAR reflected an order made by Dr. Chen for Toradol for post-surgical pain that she had administered.  Her statement further explained that Dr. Chen denied placing the patient's order for Toradol and instead accused Ms. Millard of ordering the medication, a claim which she unequivocally denied.  Mr. Newton thereafter provided Ms. Millard's statement to Olathe Health representatives.  Neither Mr. Newton nor Olathe Health representatives provided a response to the details included in Ms. Millard's written statement.  Ms. Millard was not asked or invited to participate in any purported investigation of Dr. Chen's false claims.

17. Following her call with Fusion Medical Staffing Nursing Recruiter Andy Newton on February 28, Ms. Millard was not placed in an alternative position by representatives for Fusion Medical Staffing, and her employment with Defendant Fusion Medical Staffing was terminated.

## COUNT ONE

## RETALIATION AND WRONGFUL DISCHARGE
## IN VIOLATION OF KANSAS PUBLIC POLICY
## DEFENDANTS OLATHE HEALTH AND FUSION MEDICAL STAFFING

18. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

19. Plaintiff was jointly employed by Defendants Olathe Health and Fusion Medical Staffing.

20. Defendants are vicariously liable for the actions of their employees as agents of Defendants.

21. K.S.A. Section 65-431 memorializes clearly defined public policies of the State of Kansas by setting forth standards generally governing the operation of medical care facilities licensed in Kansas. The statute provides specifically that the Bureau of Health Facilities and the Kansas State Board of Healing Arts:

> shall adopt, amend, promulgate and enforce such rules and regulations and standards with respect to the different types of medical care facilities to be licensed hereunder as may be designed to further the accomplishment of the purpose of this law in promoting safe and adequate treatment of individuals in medical care facilities in the interest of public health, safety and welfare.

K.S.A. § 65-431(a).

22. Kan. Admin. Regs. Section 28-34-9a provide in relevant part:

> (a) General provisions. Each hospital shall maintain medical records for each patient admitted for care. The records shall be documented and readily retrievable by authorized persons.
>
> …
>
> (e) Contents of medical records. Medical records shall contain sufficient information to identify the patient clearly, to justify the diagnosis and treatment, and to document the results accurately. At a minimum, each record shall include the following:
>
>> (1) Notes by authorized house staff members and individuals who have been granted clinical privileges, consultation reports, nurses' notes, and entries by designated professional personnel;
>>
>> (2) findings and results of any pathological or clinical laboratory examinations, radiology examinations, medical and surgical treatment, and other diagnostic or therapeutic treatment; and
>>
>> (3) provisional diagnosis, primary and secondary final diagnosis, a clinical resume, and, if appropriate, necropsy reports.
>
> (f) Each entry in each record shall be dated and authenticated by the person making the entry. Verbal orders, including telephone orders,

shall include the date and signature of the person recording them. The prescribing or covering practitioner shall authenticate the order within 72 hours of the patient's discharge or 30 days, whichever occurs first. Records of patients discharged shall be completed within 30 days following discharge.

Kan. Admin. Regs. § 28-34-9a

23. Kan. Admin. Regs. Section 28-34-57 provide in relevant part:

(a) A medical record shall be maintained for each patient cared for in the ambulatory surgical center. The records shall be documented and retrievable by authorized persons.

(b) Each medical record shall be the property of the ambulatory surgical center. Only persons authorized by the governing authority shall have access to medical records. These persons shall include individuals designated by the licensing department for verifying compliance with the state or federal regulations, and for disease control investigations of public health concern.

…

(d) Each medical record shall contain the following information, if applicable:

(1) Patient identification data;
(2) patient consent forms;
(3) patient history and physical;
(4) clinical laboratory reports;
(5) physician's or physicians' orders;
(6) radiological reports;
(7) consultations;
(8) anesthesia records;
(9) surgical reports;
(10) tissue reports;
(11) progress notes;
(12) a description of the care given to that patient based on the type of surgical procedure;
(13) the signature or initials of authorized personnel on notes or observations;
(14) the final diagnosis;
(15) the discharge summary;
(16) discharge instructions to the patient;
(17) a copy of the transfer form; and
(18) the autopsy findings

(e) Each record shall be dated and authenticated by the person making the entry. Nursing notes and observations shall be signed

8

>and dated by the registered nurse or licensed practical nurse making the entry. Verbal orders by authorized individuals shall be accepted and transcribed only by designated personnel;

Kan. Admin. Regs. § 28-34-57

24. Plaintiff raised legitimate, good-faith concerns as an employee of Defendants Olathe Health and Fusion Medical Staffing regarding patient care and safety directly related to medical record accuracy to Nurse Manager Ashley Grove and Surgical Services Director Jeffrey Thompson on February 9, 2022.

25. Plaintiff raised legitimate, good-faith concerns as an employee of Defendants Olathe Health and Fusion Medical Staffing regarding patient care and safety directly related to medical record accuracy to Fusion Medical Staffing Nursing Recruiter Andy Newton on February 28, 2022.

26. The concerns raised by Plaintiff to Defendants Olathe Health and Fusion Medical Staffing related to patient safety and care necessarily implicate recognized public policies of the State of Kansas.

27. As such, the subject of Plaintiff's reports to Defendants' management representatives constitute protected activities reflecting Plaintiff's concerns regarding serious infractions of clearly-defined public policies of the State of Kansas.

28. Plaintiff's complaints to Defendants' management representatives regarding patient care and safety directly related to medical record accuracy were made in good faith upon a concern regarding the wrongful activities she observed and reported rather than for a corrupt motive.

29. A reasonably prudent person would have concluded that Defendants were engaged in activities that violated rules, regulations or the law pertaining to public health and safety and the general welfare.

30. Defendants terminated Plaintiff's employment.

31. A causal connection exists between Plaintiff's protected activities and Defendants' decisions to terminate her employment.

32. Plaintiff's employment was terminated for reasons that constitute pretext for wrongful termination in violation of the public policy of the State of Kansas.

33. Defendants failed to make good faith efforts to establish and enforce policies to prevent unlawful retaliation against its employees.

34. Defendants failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the common law of the State of Kansas.

35. As a direct and proximate result of Defendants' actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

36. As a further direct and proximate result of Defendants' actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

37. As shown by the foregoing, Defendants engaged in these unlawful employment practices with malice or reckless indifference to the state-protected rights of Plaintiff. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from like conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants on Count I of her Petition, for a finding that she has been subjected to unlawful retaliation prohibited by the public policy of

the State of Kansas; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; equitable relief including reinstatement to a work environment where Plaintiff is not subjected to retaliatory conduct; for her costs expended; and for such other and further relief the Court deems just and proper.

## COUNT TWO

### DEFAMATION
### DEFENDANT DR. BENJAMIN CHEN

38. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

39. Defendant Dr. Chen uttered or wrote false or defamatory words about Plaintiff accusing her of either prescribing medication to a patient under her care without authorization or administering medication to a patient under her care without authorization.

40. Defendant communicated these statements to Plaintiff's colleagues and management representatives of Defendant Olathe Health.

41. Plaintiff's reputation has been injured as a result of the false or defamatory words uttered by Defendant Dr. Chen about her.

42. As a direct and proximate result of Defendant Dr. Chen's actions, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

43. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

44. As shown by the foregoing, Defendant engaged in these actions with malice or reckless indifference to the state-protected rights of Plaintiff. Plaintiff is therefore entitled to an


award of punitive damages in an amount sufficient to punish Defendant or to deter him and other individuals from like conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count II of her Petition, for a finding that she has been a victim of defamation by Defendant; for an award of compensatory and punitive damages; for her costs expended; and for such other and further relief the Court deems just and proper.

## COUNT THREE

### TORTIOUS INTERFERENCE WITH A PROSPECTIVE BUSINESS RELATIONSHIP
### DEFENDANT DR. BENJAMIN CHEN

45. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

46. Plaintiff was jointly employed by Defendants Olathe Health and Fusion Medical Staffing.

47. A business relationship and/or expectancy existed between Plaintiff and Defendants Olathe Health and Fusion Medical Staffing with the probability of future economic benefit to Plaintiff.

48. Defendant Dr. Benjamin Chen knew that Plaintiff was jointly employed by Defendants Olathe Health and/or Fusion Medical Staffing.

49. Defendant Dr. Benjamin Chen had knowledge of the business relationship and/or expectancy between Plaintiff and Defendants Olathe Health and Fusion Medical Staffing with the probability of future economic benefit to Plaintiff.

50. Defendant Dr. Chen uttered or wrote false or defamatory words about Plaintiff accusing her of either prescribing medication to a patient under her care without authorization or administering medication to a patient under her care without authorization.

51. Defendant communicated these statements to Plaintiff's colleagues and management representatives of Defendant Olathe Health.

52. Except for the conduct of Defendant Dr. Benjamin Chen, Plaintiff was reasonably certain to have continued the business relationship and/or realized the business expectancy.

53. The conduct of Dr. Benjamin Chen was intentional.

54. As a direct and proximate result of Defendant Dr. Chen's actions, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

55. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

56. As shown by the foregoing, Defendant engaged in these actions with malice or reckless indifference to the state-protected rights of Plaintiff. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter him and other individuals from like conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count III of her Petition, for a finding that she has been a victim of Defendant's tortious interference with her business relationship and/or business expectancy with Defendants Olathe Health and Fusion Medical Staffing; for an award of compensatory and punitive damages; for her costs expended; and for such other and further relief the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to trial by jury.

## **DESIGNATED TRIAL LOCATION**

Pursuant to D. Kan. Rule 40.2, Plaintiff hereby designates the place of trial as **Kansas City, Kansas**.

Respectfully submitted,



/s/ Lewis M. Galloway
Lewis Galloway      Kansas Bar No. 20172
1600 Genessee St Ste 918
Kansas City, MO 64102
Phone: (816) 442-7002
Fax:    (816) 326-0820
lewis@lglawllc.com

ATTORNEY FOR PLAINTIFF